Matthew **NOWINSKI**, Administrator of the Estate of Henry A. Nowinski

v.

**SERVICEMEN'S GROUP LIFE INSURANCE.**

Civ. A. No. 78–3126.

United States District Court, E. D. Pennsylvania.

Jan. 17, 1980.

Neil Mittelman, Philadelphia, Pa., for plaintiff.

Nolan N. Atkinson, Jr., Philadelphia, Pa., for defendant.

MEMORANDUM

LOUIS H. POLLAK, District Judge.

The cross-motions for summary judgment now before the Court present the question whether an enlisted member of the United States Naval Reserve delayed-entry program is an insured person under the terms of a servicemen's group life insurance policy purchased by the Administrator of Veter-

ans' Affairs under statutory authority. On January 4, 1979, I determined that the record of this case was inadequate for the purpose of making a dispositive ruling of law on defendant's motion to dismiss. The record is now more fully developed, providing an adequate basis for ruling on the motions which are now pending.

On July 21, 1975, Henry A. Nowinski enlisted in a Naval Reserve Program entitled "CACHE."[1] Pursuant to his enlistment agreement with the Navy, he was assigned to inactive duty and instructed to proceed to his current home address and to return to the AFEES (Armed Forces Examining and Entrance Station) on September 13, 1975, for the purposes of discharge from the Naval Reserve and enlistment in the Navy. On September 6, 1975, one week before his reporting date, Seaman Recruit Henry A. Nowinski was killed in an automobile accident.

After Henry's death, Matthew Nowinski—his father and the administrator of his estate—claimed $20,000 in benefits alleged to be due under the policy of group life insurance purchased by the Administrator of Veterans' Affairs from Servicemen's Group Life Insurance (SGLI) pursuant to the authority granted by 38 U.S.C. § 766. Claims were filed both with SGLI and with the Navy, and each rejected the claim. On September 19, 1978, Matthew Nowinski filed this lawsuit asserting a right to recover under the policy. Specifically, plaintiff claims that at the time of his death, Henry Nowinski was a "member of a uniformed service on . . . inactive duty training," pursuant to 38 U.S.C. § 767 and therefore entitled to coverage. Defendant responds that decedent's enlistment in CACHE did not make him a "member of a uniformed service on . . . inactive duty training," nor a member of any other category of serviceman covered by the group policy.[2]

Although the suit is based on the insurance contract, that contract repeats *in haec verba* the statutory language relative to the scope of the coverage. For convenience then, all references will be made to the language of the statute itself.

As noted above, Section 766 of Title 38 authorizes the Administrator to purchase group life insurance policies with certain specified benefits. Section 767(a) of Title 38 declares, in relevant portion, that the policy so purchased:

. . . shall automatically insure against death—

(1) any member of a uniformed service on active duty, active duty for training, or inactive duty training scheduled in advance by competent authority;

(2) any member of the Ready Reserve of a uniformed service who meets the qualifications set forth in section 767(5)(B) of this title [38 U.S.C. § 765(5)(B)] . . . . .

\* \* \* \* \* \*

in the amount of $20,000 unless such member elects in writing (A) not to be insured under this subchapter [38 U.S.C. § 765 *et seq.*] or (B) to be insured in the amount of $15,000, $10,000, or $5,000. The insurance shall be effective the first day of active duty or active duty for training, or the beginning of a period of inactive duty training scheduled in advance by competent authority, or the first day a member of the Ready Reserve

---

1. CACHE is the somewhat enigmatic, but apparently nonacronymic, title of an enlistment program designed to generate a "pool" or "storage" (hence, "CACHE") of highly qualified personnel who have agreed to enlist in the regular Navy but are allowed a period of delay before assignment to extended active duty. Chapter 12, U.S. Navy Recruiting Manual—Enlisted.

2. In addition, defendant argues that, under the terms of the policy and pursuant to 38 U.S.C. § 211(a) (1979), and 38 C.F.R. § 9.22(a)(1), determinations by the Administrator of Veterans' Affairs as to coverage under the policy are not reviewable in the courts. Because it appears that no determination was made by the Veterans Administration until December, 1978, after this lawsuit was instituted on September 19, 1978, it is not clear that the lawsuit asks this court to review that determination. In view of the disposition of the case, no further discussion of defendant's contention is warranted.

meets the qualifications set forth in section 765(5)(B) . . .

Section 765 of Title 38 provides the following pertinent definitions:

(3) The term "inactive duty training" means—

(A) duty (other than fulltime duty) prescribed or authorized for Reserves (including commissioned officers of the Reserve Corps of the Public Health Service) which duty is scheduled in advance of [*sic*] competent authority to begin at a specific time and place . . .

\* \* \* \* \* \*

(4) The terms "active duty for training" and "inactive duty training" do not include duty performed as a temporary member of the Coast Guard Reserve, and the term "inactive duty training" does not include (i) work or study performed in connection with correspondence courses, or (ii) attendance at an educational institution in an inactive status.

(5) The term "member" means—

(A) a person on active duty, active duty for training, or inactive duty training in the uniformed services in a commissioned, warrant, or enlisted rank, or grade, or as a cadet or midshipman of the United States Military Academy, United States Naval Academy, United States Air Force Academy, or the United States Coast Guard Academy;

(B) a person who volunteers for assignment to the Ready Reserve of a uniformed service and is assigned to a unit or position in which he may be required to perform active duty, or active duty for training, and each year will be scheduled to perform at least twelve periods of inactive duty training that is creditable for retirement purposes under chapter 67 of title 10 [10 U.S.C.S. § 1331 *et seq.*].

As an enlistee in the CACHE program, Henry Nowinski became a Seaman Recruit in the United States Naval Reserve and was assigned to inactive duty. His only obligation as a CACHE reservist was to report for enlistment in the Navy on September 13, 1975. The very first paragraph of the Navy's Recruiting Manual—Enlisted,

Chapter 12, makes clear that CACHE members are not required to participate in the Ready Reserve Training Program, although they may elect to do so, in the interval between enlistment in CACHE and enlistment in the Navy. And plaintiff does not contend that his son did in fact volunteer for the Ready Reserve Training Program. Nor does plaintiff assert that Henry Nowinski was otherwise assigned to a "unit" or "position" from which he might have been called upon to perform "active duty" or "active duty training," and in which he would have been obliged "to perform at least twelve periods of inactive duty training" each year. Thus, it is clear that Henry Nowinski was not covered by the group policy under the provisions of 38 U.S.C. §§ 765(5)(B) and 767(a)(2). See *Bush v. Hoffman*, No. 6–72312, (E.D.Mich., S.Div., November 18, 1977).

Plaintiff asserts, nonetheless, that his son, by enlisting in CACHE as a Reservist, and by obligating himself to report for enlistment in the Navy on September 13, 1975, brought himself within the coverage specified by Section 767(a)(1), as a "member . . . on . . . inactive duty training" as that term is defined in Section 765. Section 765(3)(A) states:

The term "inactive duty training" means—

(A) duty (other than full-time duty) prescribed or authorized for Reserves . . . which duty is scheduled in advance of [*sic*] competent authority to begin at a specific time and place . . .

Plaintiff's argument is that the fact that Henry Nowinski had been scheduled in advance to begin duty in the Navy at a specific time and place brings him within the rubric of § 765(3)(A).

Plaintiff's reading of that section is not persuasive. The fact that a member of the Reserves is "scheduled" to begin "duty" at "a specific time and place" does not serve to place him on "inactive duty training" before the period of "duty" commences. Rather, the language of the statute clearly contemplates that the status of being on

"inactive duty training" entails actual participation in that "duty" which has been scheduled in advance. Henry Nowinski was assigned to "inactive duty." Section 765(3)(A) defines a person on "inactive duty training." In denying any significance to the word "training," in the term "inactive duty training," plaintiff's proposed interpretation is untenable.

Plaintiff points out that subsection (4) of § 765 explicitly excludes "duty performed as a temporary member of the Coast Guard Reserve," from the categories of "active duty for training" and "inactive duty training," and argues that if duty performed as a temporary member of the Naval Reserve were also meant to be excluded, the statute would so specify. It is, however, of no consequence here that certain Coast Guard Reserve duty is ineligible for insurance coverage. It is not that Henry Nowinski was a temporary member of the Naval Reserve that defeats plaintiff's claim, it is the fact that he was not performing "duty," as that term is understood in the statute, that compels the conclusion that he was not covered by the insurance policy. Indeed, the further specification in that subsection that the term inactive duty training does not include (i) work or study performed in connection with correspondence courses, or (ii) attendance at an educational institution in an "inactive status," only reinforces the interpretation of "inactive duty training" as requiring participation in some undertaking beyond that associated with "inactive duty."

Defendant's motion for summary judgment will thus be granted. Plaintiff's motion for summary judgment will be denied.